**AMENDED FOR PUBLICATION**

To Be Published in Federal Supplement 2d

Eastern District of Kentucky
**FILED**
DEC 2 1 2005
AT COVINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT COVINGTON

CIVIL ACTION NO. 2005-138-WOB

KENTUCKY SPEEDWAY, LLC          PLAINTIFF

VS.          **OPINION AND ORDER**

NATIONAL ASSOCIATION OF STOCK
CAR AUTO RACING, INC.
and
INTERNATIONAL SPEEDWAY
CORPORATION          DEFENDANTS

## INTRODUCTION

This matter came before the court on November 30, 2005 for oral argument on motion of defendant NASCAR to Transfer Venue (Doc. # 30). Plaintiff was represented by Stan Chesley and Arthur Miller; defendant NASCAR was represented by Sheryl Snyder; and defendant ISC was represented by Robert Craig. The proceedings were recorded by official court reporter Joan Averdick.

## FACTUAL BACKGROUND

The National Association of Stock Car Auto Racing (hereinafter referred to as "NASCAR") has sanctioned stock car races in North America since its founding in 1949. As a sanctioning body, NASCAR establishes all the rules that govern these races and determines where those races will be held. NASCAR sanctions three "national" auto racing series: 1) the NASCAR NEXTEL Cup Series;

1

2) the NASCAR Busch Series, Grand National Division; and 3) the NASCAR Craftsman Truck Series. NASCAR sanctions other various regional and local auto racing series as well.

Kentucky Speedway has filed a complaint in this court alleging that NASCAR and the International Speedway Corporation (hereinafter referred to as "ISC") have attempted to monopolize the market for hosting national stock car racing events in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2. The complaint alleges that, as a result of antitrust violations, including an unlawful conspiracy between the defendants, plaintiff has been wrongfully denied a NEXTEL Cup Series race.

Specifically in regard to the current motion before the court, the Motion to Change Venue, NASCAR asserts that the forum selection clauses in the individual sanctioning agreements for various specific races require that this action be transferred to Volusia County, Florida.

Kentucky Speedway and NASCAR have entered into eleven different sanctioning agreements, five for Busch Series races and six for Craftsman Truck Series races. The agreements each contain the following clause:

> With respect to any litigation between the parties regarding the event or this Agreement, venue shall lie solely in Volusia County, Florida, and all parties hereto consent to service of process by, and the personal and subject jurisdiction of, the state courts in and for Volusia County, Florida.

NASCAR has sanctioned races at the Kentucky Speedway since that track opened in 2000. Kentucky Speedway has hosted Busch Series races and Craftsman Truck Series races. For each NASCAR race held, NASCAR enters into a sanction agreement with the promoter, which is usually the owner of the race track. Each agreement contains the above clause.

NASCAR claims that, because plaintiff's complaint alleges anti-competitive activity that

2

includes the Busch Series and Craftsman Truck Series races, the forum selection clause controls all the allegations of illegal activity, even those claims that do not specifically involve these races.

The facts alleged to support plaintiff's claims include that NASCAR and ISC have conspired to assure that the majority of NASCAR NEXTEL races are awarded to ISC racetracks, so that ISC racetracks receive the greatest financial benefit from NASCAR sanctioned racing events. Kentucky Speedway contends that NASCAR and ISC have instituted policies and procedures that have the purpose and effect of restraining the ability of non-ISC racetracks to develop competing products by scheduling and realigning NASCAR NEXTEL Cup Series races to maximize current revenue to ISC racetracks and injure competing racetracks, such as Kentucky Speedway.

Kentucky Speedway further alleges that ISC has conspired with NASCAR to award NASCAR NEXTEL Cup Series races to ISC racetracks while withholding award of these races to competing racetracks, such as Kentucky Speedway, irrespective of seating capacity, ticket sales, facility amenities, track location, track condition and safety, television ratings, race sponsorships, and/or consumer preference. Kentucky Speedway claims that the defendants have so acted because ISC and NASCAR have both a personal and financial interest in conspiring with one another, as NASCAR is the beneficial owner of more than 10% of ISC stock, and the two companies, while distinct legal entities, share or have shared common officers.

Kentucky Speedway further alleges that ISC has conspired with NASCAR so that ISC's racetracks receive larger broadcast revenues, along with lower purse and sanction fees, than other competing racetracks.

Plaintiff contends that, absent NASCAR's and ISC's illegal conduct, NASCAR fans would be paying lower ticket prices and have more options to watch their favorite drivers. In addition, the

3

sponsors would have more options to sponsor premium stock car races at lower prices. Kentucky Speedway further states that NASCAR and ISC's illegal conduct drives down the driver's income due to monopoly power and limits driver safety and choice by limiting the number of venues where drivers choose to compete. Plaintiff also states that, absent the alleged conduct of NASCAR and ISC, television and radio broadcasters would have more options to televise or broadcast premium stock car races at lower costs, and independent racetracks would either have the ability to host NEXTEL Cup Series or host their own competing premium stock car races.

Kentucky Speedway states that it does not seek to share in NASCAR's monopolistic profits. Rather, it seeks an open, competitive, level playing field that would allow it to pay a fair price to host a premium stock car race sanctioned by NASCAR. Kentucky Speedway states that it is not a "disappointed suitor," but a victim of NASCAR and ISC. Kentucky Speedway claims NASCAR's refusal to deal with Kentucky Speedway is not the result of a valid business justification, but rather a byproduct of NASCAR's and ISC's efforts to maintain and enhance NASCAR's monopoly in the premium stock car racing market and their attempt to monopolize the market for hosting premium stock car races. Absent NASCAR's and ISC's anti-competitive purpose and intent, Kentucky Speedway claims it would host a NEXTEL Cup Series race and consumers would benefit. Also, absent the defendants' other anti-competitive actions, Kentucky Speedway would be able to host its own premium stock car race, apart from the NEXTEL Cup Series.

Plaintiff demands relief in the form of an injunction to cease Nascar's monopolization activity, to require NASCAR to eliminate or modify its rules and practices to permit full and fair competition in the right to host premium stock car races, to require NASCAR to institute a competitive bidding process for the NEXTEL Cup Series Races, and to award Kentucky Speedway

4

a NASCAR NEXTEL Cup Series race for the year 2006 and each year thereafter. Further, damages in excess of $400,000,000 and treble damages are sought..

## ANALYSIS

Able counsel for all parties have cited many cases bearing on transfer motions. Only the most pertinent will be discussed here. It should be noted that the Circuits are not in entire agreement on the proper approach to forum selection clauses and the result reached herein might be different in other Circuits. Eventually, the Supreme Court will have to resolve any conflicts and ambiguities. This court is obliged to follow the Sixth Circuit precedents.

In the Sixth Circuit, a motion to transfer based on a forum selection clause is to be treated as a motion to transfer under 28 U.S.C. § 1404(a). *Kerobo v. Southwestern Clean Fuels Corp,* 285 F.3d 531, 535 (6th Cir. 2002). Thus, even though the parties may have agreed to a forum selection clause, this agreement is not determinative, but merely one factor to be thrown into the balance with other § 1404(a) factors. *Id.* at 538.

The *Kerobo* court stated, "The Supreme Court made it clear in *Ricoh* that forum selection clauses do not dictate the forum." *Id.* at 536 citing *Stewart Organization v. Ricoh,* 487 U.S. 22, 28, 108 S. Ct. 2239 (1988). The parties here have agreed that this is the proper approach.

"Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized case-by-case consideration of convenience and fairness." *Ricoh,* 48 U.S. at 29, 108 S. Ct. at 2244. Several factors must be considered. The forum selection clause is not conclusive but is "a significant factor." *Id.* In choosing the most convenient forum the court must consider "the fairness of the transfer in the light of the forum selection clause *and the*

5

*parties' relative bargaining power." Id.* (Emphasis added).

The district court has "broad discretion" in ruling on the motion. *Id.,* 48 U.S. at 31, 108 S. Ct. at 2245. Therefore, the district court in the exercise of its discretion may "refuse to transfer a case notwithstanding the counterweight of a forum-selection clause." *Id.,* 48 U.S. at 31, 108 S. Ct. at 2244.

In *Viron International Corp. v. David Boland, Inc.,* 237 F.Supp.2d 812, 816 (W.D. Mich. 2002), the court observed that in ruling on a § 1404 (a) motion:

> the Court must examine a number of factors, including (1) convenience of the parties and the witnesses, (2) accessibility of sources of proof, (3) the costs of securing testimony from witnesses, (4) practical problems associated with trying the case in the least expensive and most expeditious fashion, and (5) the interests of justice. *Id*; *see also Keweenaw Konvenience, Inc. v. Commerce & Indus. Ins. Co.,* No. 5:00-CV-111, 2001 U.S. Dist. LEXIS 247, at *5 (W.D. Mich. Jan. 11, 2001); *see also Moses v. Business Card Express, Inc.,* 929 F.2d 1131, 1136-7 (6th Cir.), *cert. denied,* 502 U.S. 821, 112 S. Ct. 81, 116 L.Ed.2d 54 (1991). Other factors include (1) the relative congestion in the courts of the two forums, (2) the public's interest in having local controversies adjudicated locally, (3) the relative familiarity of the two courts with the applicable law, (4) the plaintiff's original choice of forum, and (5) whether the parties have agreed to a forum selection clause. *See* MOORE'S FEDERAL PRACTICE § 111.13(1)(b) at 111-66-67 (3d ed.)."

The court will address these factors in turn:

1) The convenience of parties and witnesses is a wash. Witnesses are in Florida, Kentucky, and all around the country. Nor, in litigation of this magnitude and involving the sums apparently at stake here, is any party likely to be denied a fair forum due to the expense or inconvenience involved in traveling to the other party's home state.

2) Sources of proof are about as accessible in either forum, considering teleconferencing and the electronic transmission of data.

3) The costs of securing testimony are about the same in either forum;

6

4) The same may be said of the practical problems of trying the case. We are fortunate to have a modern technologically-equipped courthouse, near a large international airport, which is the hub of one of the nation's principal airlines.

5) The interests of justice will be discussed below.

Other factors:

1) Both of the proposed dockets are current;

2) *There exists a strong public interest in having this controversy adjudicated locally.*

3) Judges of either court would be familiar with the applicable law or can become so.

4) *The plaintiffs have chosen the Covington docket of this court;*

5) *There exist forum selection clauses as described above in contracts which control transactions which are related to the controversy now before the court, but do not include that controversy. The defendant NASCAR had superior bargaining power in mandating the inclusion of those clauses.*

It is the italicized factors above that are critical here, and the balancing of the equities concerning those factors that must dictate the result.

After extremely careful consideration, the court has concluded that the factor of strong public interest and the plaintiffs' choice of a forum must outweigh the forum selection clauses.

Auto racing is a national sport. Apparently, a NEXTEL race is the World Series or Super Bowl of that sport. Many members of the local community are fans who have a great interest in having such a race occur locally. Obviously, there would be a great shot in the arm to the local economy that would also result, as well as an enhancement to community prestige. The plaintiff claims, and the defendants have not denied, that the Commonwealth of Kentucky has certain

7

investments or commitments which would be enhanced by having a NEXTEL race at plaintiff's track.

The forum selection clauses do not pertain directly to this controversy, although certainly under their terms they are marginally relevant and the present litigation falls within their language. It cannot be denied, however, that they were not entered into with the NEXTEL race in mind, but concerned a series of independent discrete events. Further, NASCAR has enjoyed the greater leverage in imposing the clauses. Lastly, no contracts containing such clauses exist with the co-defendant.

Therefore, in the opinion of the court, the weight to be given these clauses must yield to that of the other factors mentioned immediately above. Particularly, the court concludes that the great public interest in having this dispute decided locally tips the balance in favor of retaining the case here. In none of the cases cited by the parties or found by the court is the public interest factor as great as it is here.

Therefore, the court being advised,

**IT IS ORDERED** as follows:

1) That the motion to transfer venue (Doc. #30) be, and it is, hereby **DENIED**; and

2) That a hearing on all other pending motions be, and it is, hereby set for **Thursday, January 12, 2006 at 1:30 p.m.**

This 20th day of December, 2005.

_William O. Bertelsman_
**WILLIAM O. BERTELSMAN, JUDGE**