To Be Published in Federal Supplement 2d



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT COVINGTON

CIVIL ACTION NO. 2005-138 (WOB)

KENTUCKY SPEEDWAY, LLC                                                    PLAINTIFF

VS.                               **OPINION AND ORDER**

NATIONAL ASSOCIATION OF STOCK
CAR AUTO RACING, INC.
and
INTERNATIONAL SPEEDWAY
CORPORATION                                                               DEFENDANTS

**BERTELSMAN, District Judge:**

I.    INTRODUCTION

This matter concerns allegations by Plaintiff, Kentucky Speedway, of monopolization and other antitrust violations against Defendants, the National Association of Stock Car Racing (hereinafter referred to as "NASCAR") and the International Speedway Association (hereinafter referred to as "ISC"). This matter is currently before the court on NASCAR's Motion to Dismiss (Doc. #33), ISC's Motion to Dismiss (Doc. #37), NASCAR's Motion to Dismiss the Amended Complaint (Doc. #65) and ISC's Motion to Dismiss the Amended Complaint (Doc. #67).

II    FACTUAL BACKGROUND

NASCAR has sanctioned stock car races in North America since its founding in 1949. As a sanctioning body, NASCAR establishes all the rules that govern the sanctioned races and

1

determines where these races will be held. NASCAR sanctions three "national" auto racing series: 1) the NASCAR NEXTEL Cup Series; 2) the NASCAR Busch Series, Grand National Division; and 3) the NASCAR Craftsman Truck Series. NASCAR sanctions other various regional and local auto racing series as well.

Kentucky Speedway has filed a complaint in this court alleging that NASCAR and ISC have monopolized and attempted to monopolize the market for hosting national stock car racing events in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2. The complaint alleges that, as a result of antitrust violations, including an unlawful conspiracy between the defendants, plaintiff has been wrongfully denied a NEXTEL Cup Series race.

The facts alleged to support plaintiff's claims include that NASCAR and ISC have conspired to assure that the majority of NASCAR NEXTEL races are awarded to ISC racetracks, so that ISC racetracks receive the greatest financial benefit from NASCAR sanctioned racing events. Kentucky Speedway contends that NASCAR and ISC have instituted policies and procedures that have the purpose and effect of restraining the ability of non-ISC racetracks to develop competing products by scheduling and realigning NASCAR NEXTEL Cup Series races to maximize current revenue to ISC racetracks and injure competing racetracks, such as Kentucky Speedway.

Kentucky Speedway further alleges that ISC has conspired with NASCAR to award NASCAR NEXTEL Cup Series races to ISC racetracks while withholding awards of these races to competing racetracks, such as Kentucky Speedway, irrespective of seating capacity, ticket sales, facility amenities, track location, track condition and safety, television ratings, race sponsorships, and/or consumer preference. Kentucky Speedway claims that the defendants have

2

so acted because ISC and NASCAR have both a personal and financial interest in conspiring with one another, as NASCAR is the beneficial owner of more than 10% of ISC stock, and the two companies, while distinct legal entities, share or have shared common officers and directors.

Kentucky Speedway further alleges that ISC has conspired with NASCAR so that ISC's racetracks receive larger broadcast revenues, along with lower fees, than other competing racetracks.

Plaintiff contends that, absent the illegal conduct by NASCAR and ISC, NASCAR fans would be paying lower ticket prices and have more options to watch their favorite drivers. In addition, the sponsors would have more options to sponsor premium stock car races at lower prices. Kentucky Speedway further states that the illegal conduct by NASCAR and ISC forces down the drivers' income due to monopoly power and limits driver safety and choice by limiting the number of venues where drivers choose to compete. Plaintiff also states that, absent the alleged conduct of NASCAR and ISC, television and radio broadcasters would have more options to televise or broadcast premium stock car races at lower costs, and independent racetracks would either have the ability to host NEXTEL Cup Series races or host their own competing premium stock car races.

Kentucky Speedway states that it does not seek to share in NASCAR's monopolistic profits. Rather, it seeks an open, competitive, level playing field that would allow it to pay a fair price to host a premium stock car race sanctioned by NASCAR. Kentucky Speedway states that it is not a "disappointed suitor," but a victim of NASCAR and ISC. Kentucky Speedway claims NASCAR's refusal to deal with Kentucky Speedway is not the result of a valid business justification, but rather a byproduct of the efforts of NASCAR and ISC to maintain and enhance

3

NASCAR's monopoly in the premium stock car racing market and their attempt to monopolize the market for hosting premium stock car races. Absent the anti-competitive purpose and intent of NASCAR and ISC, Kentucky Speedway claims it would host a NEXTEL Cup Series race and consumers would benefit. Also, absent the defendants' other anti-competitive actions, Kentucky Speedway would be able to host its own premium stock car race, apart from the NEXTEL Cup Series.

Plaintiff demands relief in the form of an injunction prohibiting NASCAR's monopolization activity, to require NASCAR to eliminate or modify its rules and practices to permit full and fair competition in the right to host premium stock car races, to require NASCAR to institute a competitive bidding process for the NEXTEL Cup Series Races, and to award Kentucky Speedway a NASCAR NEXTEL Cup Series race for the year 2006 and each year thereafter. Further, damages in excess of $400,000,000 and treble damages are sought.

### III   SUBSTANTIVE ALLEGATIONS

As in prior rulings, out of the abundance of cases cited by the active and industrious counsel herein, the court will refer to only those that are most pertinent.

All defendants have filed motions to dismiss the amended complaint for failure to state antitrust claims.

Defendants argue that, although the standard for dismissal of an antitrust complaint is the same as for other cases, in practice it seems that more complaints are dismissed in antitrust cases. *See, e.g., Care Heating & Cooling, Inc. v. American Standard, Inc.*, 427 F.3d 1008 (6th Cir. 2005); *Buyer's Corner Realty, Inc. v. Northern Ky. Ass'n of Realtors*, ____ F. Supp.2d ____

(E.D. Ky. 2005).

It has, however, been held that courts should be reluctant to dismiss antitrust complaints before the plaintiff has had an opportunity for discovery. *E.g. ,Hospital Building Co., v. Trustees of Rex Hospital, et al,* 425 U.S. 738, 746, 96 S. Ct. 1848, 1853 (1976); *Hamilton Chapter of Alpha Delta Phi, Inc., v. Hamilton College,* 128 F.3d 59, 63 ( 2d. Cir.1997). *See* IA Phillip E. Areeda and Herbert Hovenkamp, *Antitrust Law,* ¶ 266(b2)(2d Ed. 2000); *cf., Chrysler v. Fedders,* 643 F.2d 1229, 1240 (6th Cir. 1981).

The Supreme Court has held that, "The test of sufficiency . . . is whether the claim is wholly frivolous." *Radovich v. National Football League,* 352 U.S. 445, 453, 77 S. Ct. 390, 394 (1957). Further, "[w]hile the complaint might have been more precise" it would not be dismissed where the Court was "not prepared to say that nothing can be extracted from [it] that falls under the Act of Congress." *Id.* After a careful analysis of the amended complaint herein, this court concludes that it passes this "test of sufficiency."

The amended complaint alleges a conspiracy by defendants to monopolize, actual monopolization, and an attempt to monopolize the market for premium stock car races. It alleges that actual monopolization exists. It also alleges that, as a result of such illicit activity, plaintiff is prevented from receiving a premium race from NASCAR, or holding one independently. (Amended Complaint, ¶¶ 29-37, 39, 42-45, 47-51). Such allegations charge both horizontal and vertical restraints. The court cannot say such allegations are "frivolous" or that there are no claims that can be "extracted" from them that would violate the antitrust laws.

Although upholding a jury verdict for defendants, the First Circuit recently noted:
To show monopolization, players had to prove that MLS had engaged in an act that

5

helped create or maintain the alleged monopoly. III Areeda & Hovenkamp, *Antitrust Law* ¶ 650a (rev. Ed. 1996). In section 2 cases, the wrongful act is usually one designed to exclude competitors from the market (e.g., predatory price, exclusive dealing). *See Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 605 & n. 32, 105 S. Ct. 2847, 86 L.Ed.2d 467 (1985).

*Fraser v. Major League Soccer, LLC*, 284 F.3d 47, 61 (1st Cir. 2002 ).

The plaintiffs in *Fraser* therein failed to meet this burden of proof and they lost, but this was after a jury trial.

The defendants admit for purposes of this motion that the relevant market is premium NASCAR NEXTEL stock car races, although defendants reserve the right to argue for a different market if the case proceeds. The allegations that such is the proper market are not frivolous. In *Spirit Airlines v. Northwest Airlines*, 431 F. 3d 917 (6th Cir. 2005), the Sixth Circuit overruled a grant of summary judgment for defendant in a monopolization case. The court recognized that a market may be narrowly defined. The court found that the trier of fact could have concluded that one air route was the relevant market. *Id.* at 936. The court further observed that control of two-thirds of the market by the defendant would probably constitute a monopoly. *Id.* at 937.

It may be inferred from the amended complaint here that the defendant NASCAR controls 100% of the market for NEXTEL races, the admitted relevant market for purposes of these motions.

The core of the court's analysis in *Spirit Airlines* was as follows:

As to whether Northwest possessed monopoly power in this market, the Supreme Court's formulations of monopoly power are "the ability of a single seller to raise price and restrict output." *Eastman Kodak*, 504 U.S. at 464, 112 S. Ct. 2072 (quoting *Fortner Enterprises, Inc. v. United States Steel Corp.*, 394 U.S. 495, 503, 89 S. Ct. 1252, 22 L.Ed.2d 495 (1969)) or the power to "control prices or exclude competition," *United*

6

*States v. E.I. duPont Nemours & Co.*, 351 U.S. 277, 391, 76 S.Ct. 994, 100 L. Ed. 1264 (1956). "[A]s an economic matter, market power exists whenever prices can be raised above the levels that would be charged in a competitive market." *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 27 n. 46, 104 S.Ct. 1551, 80 L.Ed 2d 2 (1984). We described monopoly power as the defendant's power "to raise prices or to exclude competition when it is desired to do so." *Byars*, 609 F.2d at 850 (quoting *American Tobacco Co. v. United States*, 147 F.2d 93, 112 (6th Cir. 1944), *aff'd*, 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946)).

The existence of such power ordinarily is inferred from the seller's possession of a predominant share of the market." *Eastman Kodak*, 504 U.S. at 464, 112 S.Ct. 2072. Judge Learned Hand enunciated what has become the classic explanation of when market share becomes large enough to constitute a monopoly: "over ninety . . . percentage is enough to constitute a monopoly; it is doubtful whether sixty or sixty-four percent would be enough; and certainly thirty-three percent is not." *United States v. Aluminum Co. of America*, 148 F.2d 416, 424 (2nd Cir. 1945). In *Eastman Kodak*, the Court cited its earlier precedent that possession of "over two-thirds of the market is a monopoly." 504 U.S. at 481, 112 S.Ct. 2072 (citing *American Tobacco Co. v. United States*, 328 U.S. 781, 797, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946)).

*Id.* at 935.

This court also notes that the Supreme Court has held that a relevant market could be found to exist in championship boxing matches. *International Boxing Club of New York v. U.S.*, 358 U.S. 242, 244-5, 79 S. Ct. 245 (1959).

Defendants argue that the complaint does not allege an antitrust injury because there is no "necessary predicate" for an antitrust injury in that plaintiff merely seeks to join the defendants' monopoly.[1] But it is stated in the very text defendants cite:

---

[1] Defendant ISC cites to several cases to support its position that plaintiff lacks the "necessary predicate" for an antitrust injury. The court finds the cases so cited distinguishable from the facts as presented herein in that the injuries alleged by Kentucky Speedway are reflective of the anti-competitive effect of the alleged anti-competitive acts, and are the type of losses likely to be caused by the claimed violations. *See generally CTUNIFY, Inc. v. Nortel Networks, Inc.*, 115 Fed. Appx. 831 (6th Cir. 2004); *Watkins & Son Pet Supplies v. The Iams Co.*, 254 F.3d 607 (6th Cir. 2001); *Valley Products Co., Inc. v. Landmark, A Division of Hospitality Franchise Systems, Inc.*, 128 F.3d 393 (6th Cir. 1997); *Hodges v. WSM, Inc.*, 26 F.3d 36 (6th Cir. 1994); *Axis S.P.A. v. MICAFIL, Inc.*, 870 F.2d 1105 (6th Cir. 1989).

7

But the ultimate issue is whether the plaintiff (1) seeks to join the exclusive arrangement while leaving the exclusivity requirement otherwise intact; or (2) seeks to forbid exclusivity -- first on its own behalf and implicitly on behalf of others. In the former case the plaintiff is not a victim of antitrust injury, for there is no antitrust right to join a cartel. *In the latter case antitrust injury exists because the plaintiff is seeking to destroy an anti-competitive arrangement.*

II Areeda & Hovenkamp, *Antitrust Law*, ¶ 348(e)(emphasis added).

A fair inference may be drawn from the amended complaint that plaintiff is "seeking to destroy an anticompetitive arrangement."

It may well be that plaintiff's case will fail when scrutinized after discovery under the higher standards of proof that will prevail on summary judgment or at trial. However, this is the pleading stage, and dismissal of the case at this time would be premature. This court will require the plaintiff at the close of discovery to plead with particularity the theories it believes can be pursued in good faith, in light of the facts disclosed by the discovery.

Therefore, the motions to dismiss will be denied.

## IV    VENUE AND PERSONAL JURISDICTION

Plaintiffs advance several theories to support their claim of appropriate venue and personal jurisdiction over defendant ISC. Defendant NASCAR does not challenge venue or personal jurisdiction.

### A.    Venue

General venue is controlled by 28 U.S.C. § 1391(b):

A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any

8

defendant resides, if all defendants reside in the same State, *(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred*, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b) (emphasis added).

The amended complaint alleges that plaintiff was the victim of an ongoing conspiracy by the defendants to monopolize and attempt to monopolize the market for premium stock car auto races and further alleges that this conspiracy is preventing plaintiff from acquiring such a race sanctioned by NASCAR or running one on its own. The amended complaint further alleges that plaintiff is thus damaged in the operation of its business which is headquartered in Kentucky. Thus, it alleges substantial damages to its Kentucky business as an effect of the alleged conspiracy, monopoly and anti-competitive conduct.

The requirement of § 1391(b)(2) is met here, since this is a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."

The plain language of the statute makes clear that the district where the action is brought need not be the only district where such "events or omissions" occurred, or even the district where *the* substantial part occurred, and that more than one district may have proper venue. *First of Michigan Corp. v. Bramlet*, 141 F. 3d 260, 263 (6th Cir. 1998). The legislative history makes clear that the intent of the quoted statutory language was to expand the scope of venue in federal actions.

> In light of the amended language of § 1391(a)(2), we hold that in diversity of citizenship cases the plaintiff may file his complaint in any forum where a substantial part of the events or omissions giving rise to the claim arose; <u>this includes any forum with a substantial connection to the plaintiff's claim</u>.

9

*Id.* at 263(emphasis added).

Therefore, this court holds that venue is proper in this district.

It is fundamental, however, that in addition to venue being proper the court must also have personal jurisdiction over a defendant.

### B. Personal Jurisdiction

When a district court acts on a defendant's motion to dismiss for lack of personal jurisdiction, without having had an evidentiary hearing, the plaintiff only needs to make a prima facie showing of jurisdiction to avoid the motion. *See Chrysler Corp.*, 643 F.2d at 1240; *Harris Rutsky & Co. Ins.*, 328 F.3d at 1129. Here, the plaintiff advances several arguments that personal jurisdiction exists.

#### 1. The Kentucky Long Arm Statute

Personal jurisdiction over ISC will exist if it caused "tortious injury by an act or omission in this Commonwealth." KRS 454.210 (a)(4), (5). Or, if "it caused tortious injury in this Commonwealth by an act or omission outside this Commonwealth" and "regularly does or solicits business, or engages in any other persistent course of conduct or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth" and "the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth." *Id.*

Plaintiff points out that ISC makes an interactive web site available to Kentucky residents

10

and syndicates a radio program on some Kentucky radio stations. ISC raises factual issues with regard to these contentions that would require discovery on the personal jurisdiction issue for the court to determine whether specific or general personal jurisdiction exists under the statute.

Inasmuch as that would delay the progress of this litigation, which already promises to be protracted, the court will express no opinion on this ground but move on to others where it has concluded that personal jurisdiction has been established without discovery. But the court notes that, if the other grounds were to fail, plaintiff will be entitled to discovery on this theory.

### 2. The Conspiracy Theory of Personal Jurisdiction

A conspiracy exists where two or more persons enter into a plan or partnership to accomplish an illegal act. *See Chrysler Capital Corp v. Century Power Corp,* 778 F. Supp. 1260, 1267 (S.D.N.Y. 1991); *James v. Wilson,* 95 S.W.2d 875 (Ky. App. 2002); 15A C.J.S. *Conspiracy* § 4 (2005). Every member of the conspiracy is liable for the acts of every other member, because the law considers each member of the conspiracy to be the agent of the other members. *See Jung v. Assoc. of American Medical Colleges,* 300 F. Supp.2d 119, 141 (D.D.C 2004); *See also Omega Homes, Inc. v. Citicorp Acceptance Co.,* 656 F. Supp. 393, 399 (W.D.Va. 1987), and *Monsanto City Schools v. Riso Kagaku Corp.,* 157 F. Supp.2d 1128, 1132 (E.D.Ca. 2001).

This basic concept may be applied in determining whether personal jurisdiction exists over an alleged co-conspirator. Simply put, if one co-conspirator commits acts in the forum which would justify the forum court in exercising personal jurisdiction over it, those acts are attributed to the other co-conspirators and personal jurisdiction exists over them as well.

11

An excellent exposition of the doctrine is found in *Jung v. Association of American Medical Colleges,* 300 F. Supp. 2d 119, 140 (D.D.C. 2004):

> Plaintiffs assert that the Court has jurisdiction over all the moving defendants pursuant to the "conspiracy" theory of long-arm jurisdiction. Under this doctrine, acts undertaken within the forum by one co-conspirator in furtherance of an alleged conspiracy may subject a non-resident co-conspirator to personal jurisdiction under the long-arm statute. *See Second Amendment Foundation v. United States Conference of Mayors,* 274 F.3d 521, 524 (D.C.Cir. 2001) (citing *Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan,* 115 F.3d 1020, 1030-31 (D.C.Cir. 1997)) (applying conspiracy theory of personal jurisdiction to long-arm statute's "transacting business" subsection); *First Chicago Int'l v. United Exch. Co.,* 836 F.2d at 1377-78; *Edmond v. United States Postal Serv. Gen. Counsel,* 949 F.2d at 424-425 (discussing application of conspiracy theory under Section 13-423 (a)(3)).
>
> Plaintiffs claim that personal jurisdiction exists over each moving defendant pursuant to the conspiracy theory of jurisdiction stemming from Section 13-423(a)(1). *See* Pls.' (B)(2) Opp. at 24-30. Conspiracy jurisdiction under this subsection presumes that "[p]ersons who enter the forum and engage in conspiratorial acts are deemed to 'transact business' there 'directly'; [and] coconspirators who never enter the forum are deemed to 'transact business' there 'by an agent.'" *Second Amendment Foundation v. United States Conference of Mayors,* 274 F.3d at 523 (quoting D.C. Code § 13-423(a)(1)). So long as any one co-conspirator commits at least one overt act in furtherance of the conspiracy in the forum jurisdiction, there is personal jurisdiction over all members of the conspiracy. *See Dooley v. United Technologies Corp.,* 786 F.Supp. at 78. In this context, plaintiffs must allege (1) the existence of a conspiracy; (2) the nonresident's participation in or agreement to join the conspiracy; and (3) an overt act taken in furtherance of the conspiracy within the forum's boundaries. *See Edmond v. United States Postal Serv. Gen. Counsel,* 949 F.2d at 425.
>
> "Mere speculation" that a conspiracy exists or that "the non-resident defendants are co-conspirators [is] insufficient to meet plaintiff's [] burden." *Dooley v. United Technologies Corp.,* 786 F.Supp. at 78. A plaintiff resting on the conspiracy theory of jurisdiction "must plead with particularity the conspiracy as well as the overt acts within the forum taken in furtherance of the conspiracy." *Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan,* 115 F.3d at 1031 (internal quotation omitted). *See also United States v. Philip Morris, Inc.,* 116 F.Supp.2d at 122.

*Jung,* 300 F. Supp.2d at 140 (emphasis added)(footnote omitted).

The Sixth Circuit has recognized the conspiracy theory where there is some minimal

factual support of [the non-resident defendant's] participation in the conspiracy. *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1237 (6th Cir. 1981)(theory neither adopted nor rejected). ISC relies on this case because the court dismissed the complaint before it because it was "unsupported by any factual assertions." *Id.*

This court cannot, however, say that in the instant case the allegations of a conspiracy in which the ISC participated are "unsupported by any factual assertions" in the amended complaint. The amended complaint alleges that NASCAR and ISC have interlocking ownership and management and that ISC is receiving far more than its share of premium races and is benefitting from alleged anti-competitive conduct that is the object of the conspiracy.

The court holds that these allegations are sufficient to meet the conspiracy theory of personal jurisdiction as above described and that the better view is to recognize this doctrine in appropriate cases.

### 3. Nationwide Service of Process (15 U.S.C. § 22)

In 15 U.S.C. § 22, Congress provided for nationwide or even worldwide service of process in antitrust cases. The courts are in disagreement on the interpretation of that statute, however.

The statute reads:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

15 U.S.C. § 22.

13

Some courts hold that, by today's standards, in order to utilize the broad service of process provision the narrow venue provision contained in the first part of the statute must be met. *E.g., Daniel v. American Board of Emergency Medicine*, 428 F.3d 408 (2d Cir. 2005)(extensive discussion).

Other courts hold that if proper venue exists under the general venue statute, 28 U.S.C. § 1391, the far-sweeping service of process provisions may be employed. *E.g., Go-Video, Inc. v. Akai Elec. Co.*, 885 F.2d 1406, 1415 (9th Cir. 1989). This court has held above that venue under § 1391 is proper here. (*See* discussion *supra*, Part IV. A).

The Sixth Circuit has apparently not expressed a view on this issue. Although the matter is not free from doubt, this court believes that *Go-Video, supra*, and the cases which agree with it embody the better view.

The antitrust statute, enacted in 1914, was intended to provide for nationwide service of process in antitrust cases, where venue is appropriate. The general venue statute has since been amended more than once -- the latest being in 1990 -- to continually broaden the tests for appropriate venue. *See First Michigan Corp. v. Bramlet*, 141 F.3d 260, 263 (6th Cir. 1998), and authorities therein cited. If the narrow interpretation of the nationwide service of process provision were employed, antitrust venue would now be narrower than general venue, a result of which would be contrary to the intent of 15 U.S.C. § 22. *See Go Video, supra*.[2] This court

---

[2] For a review of the conflicting interpretations of this statute see Jordan G. Lee, Note, Section 12 of the Clayton Act: When Can Worldwide Service of Process Allow Suit in Any District, 56 Fla. L. Rev. 673, 668, July 2004; 1, Nanda and Pansius, Litigation of International Disputes in U.S. Courts, Personal Jurisdiction, Interdependence of Personal and Subject Matter Jurisdiction, § 1:11(2005).

The following cases support the broader interpretation of the statute: *Go Video, Inc. v.*

14

agrees with the view expressed in the conclusion of the Florida Law Review article cited in footnote 2, *supra*:

> While initially appealing because of its simplicity, the narrow interpretation of section 12 constricts the power of antitrust enforcement and overlooks significant factors for broadening its reach. Antitrust laws need flexible jurisdictional and venue provisions to properly implement their goals. The *Goldlawr, Inc.* case remains unpersuasive because of dicta, and *GTE New Media Services'* brief analysis leaves many of the arguments addressed in *Go-Video, Inc.* and *Daniel* unanswered. In contrast, *Go-Video, Inc.* and others endorsing the broad section 12 interpretation use case law, congressional history, and public policy to look beneath the language of the statute and find strong arguments for a powerful section 12. Additionally, foreign corporate defendants face increased exposure to antitrust liability because if the unique nature of § 1391(d) and the Supreme Court rulings in *Pure Oil Co.* and *Brunette Machine Works, Ltd.*
>
> With the broad interpretation of section 12 comes the fear of exploitation. Defendants could find themselves defending cases in distant parts of the country where they have few, if any, connections. When these situations do occur, courts suggest reliance on other efficiency safeguards, like venue transfer, forum non conveniens, and dismissal. *Proper enforcement of national concerns, such as competition and antitrust laws, require liberal jurisdictional powers to prevent violators from manipulating the traditional notions of civil procedure for their own protection.*
>
> Lee, 56 Fla. L. Rev. at p. 696 (emphasis added).

Further, under the restrictive view, § 22 would be a nullity since, if the defendant is an "inhabitant," or "may be found or transacts business" in a district, nationwide service of process would be unnecessary, since personal jurisdiction could be obtained under modern long-arm statutes, which did not exist in 1914.

---

*Akai Electric Co.*, 885 F. 2d 1406 (9th Cir. 1989); *Daniel v. American Board of Emergency Medicine*, 988 F. Supp. 127 (W.D. NY. 1997).

The following cases support the narrow interpretation of the statute: *GTE New Media Services v. Bell South Corp.*, 199 F.3d 1343 (D.C. Cir. 2000); *Goldlawr, Inc. v. Heiman*, 288 F.2d 579 (2d Cir. 1961); *Jung v. Association of American Medical Colleges*, 300 F. Supp.2d 119, 140 (D.D.C. 2004).

Therefore, since general venue is proper, there is nationwide service of process in this case, pursuant to 15 U.S.C. § 22, and this court has personal jurisdiction over ISC. This follows without the necessity of further discovery.[3]

Therefore, the Court being advised,

**IT IS ORDERED** as follows:

1. That all pending motions to dismiss, Docs. # 33, # 37, # 65, and # 67, be and they are, hereby **DENIED**;

2. That a discovery deadline is hereby established as **February 1, 2007**;

3. That no later than **thirty (30) days** after the close of discovery, the plaintiffs shall file a further amended complaint alleging with particularity the antitrust theories it believes can be pursued in good faith in light of the facts disclosed on discovery;

4. That no later than **thirty (30) days** after the filing of such further amended complaint, defendants shall file such dispositive motions as they deem appropriate;

5. That plaintiff shall have **thirty (30) days** thereafter to respond to such motions and defendants shall have **fifteen (15) days** to reply thereto; and

6. That discovery disputes are hereby **referred** to Honorable J. Gregory Wehrman, United States Magistrate Judge, pursuant to the court's standard order entered concurrently herewith.

---

[3] If the narrower view prevails, plaintiff would be entitled to do further discovery to determine if ISC may be found or transacts business in this district.

This 27th day of January, 2006.

_____
**WILLIAM O. BERTELSMAN, JUDGE**

17