UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT COVINGTON

CIVIL ACTION NO. 05-138-WOB

KENTUCKY SPEEDWAY, LLC                                              PLAINTIFF

VS.

NATIONAL ASSOCIATION OF STOCK
CAR AUTO RACING, INC., ET AL.                                       DEFENDANTS

**MEMORANDUM ORDER**

Several pretrial motions have been filed by the parties in this case, spurred by an underlying dispute about the appropriate breadth of discovery. Kentucky Speedway's amended complaint asserts claims against NASCAR and its sister company, International Speedway Corporation ("ISC") for conspiracy and monopolization in violation of the Sherman Act §§1 and 2. The amended complaint refers to two relevant markets: (1) "the market for premium stock car races and related testing and events," and (2) "the market for hosting a premium stock car racing event." DE #59, ¶¶26, 27.

On August 18, 2006, plaintiff moved to compel defendant to produce financial documents. Defendant opposes the motion, arguing that the highly sensitive financial information sought by plaintiff is irrelevant to the controversy before this court. Defendant NASCAR has requested a hearing, which this court finds to be unnecessary on this first motion to compel in light of the extensive briefing by the parties. On October 10, 2006, plaintiff Speedway filed a second motion to compel discovery, which motion is not yet ripe. Plaintiff has also filed two motions to seal highly sensitive documents relating to its motions to compel. Finally, plaintiff has moved to extend the discovery and pretrial deadlines in part to accommodate the delays which have arisen from the underlying discovery dispute.

**Plaintiff's first Motion to Compel**

Plaintiff served its first request for production on February 17, 2006. Defendant responded in March, but declined to produce all "tax returns" or "audited or unedited financial statements, including income statements, balance sheets and operating statements for NASCAR and its affiliated entities." NASCAR objected both on grounds of relevancy for most of the documents, and because the request would require NASCAR to disclose "confidential business information and trade secrets to a proclaimed competitor." The latter objection is at least partially ameliorated by the existing protective order in the record.[1]

NASCAR's relevancy objection is based on the fact that it operates eleven other racing series and numerous businesses, including movie and television productions, which are wholly unrelated to the Nextel Cup Series and/or premium stock car racing that is the subject of this lawsuit. NASCAR also has subsidiaries which conduct businesses which NASCAR contends are unrelated to the subject matter of the first amended complaint. NASCAR has offered to produce financial documents limited to "the markets set forth in the First Amended Complaint." In fact, NASCAR has already provided all profit and expense information relating to the NEXTEL Cup Series.

Plaintiff responds to NASCAR's relevancy objection with four basic arguments: 1) the documents are relevant to show market share; 2) the documents are relevant due to the possibility of cross-subsidization; 3) the documents are relevant to show overlap with ISC; and 4) additional documents are needed to demonstrate the types of relevant documents available.

Plaintiff first argues that limiting records to the markets of premium stock car racing is unfair because "all facets of NASCAR relate to, and are dependent on, revenues derived from premium

---

[1]That said, the court is not oblivious to the fact that preventing disclosure of sensitive financial information to a competitor is always a better form of security than the most detailed protective order.

2

stock car racing." Plaintiff alleges that all NASCAR profits "whether in sponsorship, licensing, or branded hot dogs" can be traced back to relate to the Nextel Cup Series. In that sense, plaintiff argues very broadly that the financial information is relevant to show NASCAR's "market power." Only financial data concerning the relevant market is relevant, a point not disputed by plaintiff. Instead, plaintiff seeks an extremely broad definition of the relevant market.

Plaintiff next argues that broad information is relevant because of the possibility of "cross-subsidization." Plaintiff explains that NASCAR "may" have loaded expenses into the "competition" financials, decreasing apparent profitability in that area, while increasing profitability in a different area concerning which no financial data is produced. Defendants object that the mere "possibility" of this type of "cross-subsidization" should not entitle the plaintiff to otherwise irrelevant financial data.

Plaintiff's third argument in favor of relevancy is that the financial data for all businesses is necessary "to the extent there is any overlap with ISC." However, NASCAR contends that it is improper to assume "overlap" between NASCAR and ISC unrelated to the relevant product market for premium stock car racing or the market for "the right to host" such races. To the extent that NASCAR has shared expenses with ISC, defendant argues that they are disclosed in ISC's public filings with the government, available on the SEC's website since 1998. Plaintiff objects that it should not have to accept "at face value ISC's summary description of the overlap between ISC and NASCAR."

Finally, the parties argue about whether plaintiff should be required to review the financial documents already in its possession. Defendant asserts that if only plaintiff would look at what it has, "it would become clear to Kentucky Speedway that it did not need the additional financial information...or in the alternative, that [plaintiff] would be in a better position to articulate the type of financial information it needed." Plaintiff argues that it should not be forced to scour the financial records already

3

submitted, both because the overall discovery is voluminous and ongoing,[2] and because defendant has made abundantly clear that it has not and will not produce the detailed financial records plaintiff seeks.

Defendant also suggests that plaintiff should be required to more specifically identify what documents it seeks through a preliminary set of interrogatories. However, as noted by plaintiff, it is both proper and common under Rule 34 "to request all documents that 'relate or refer' to specified pertinent matters," as was done by plaintiff in this case.

**Analysis and Conclusions**

Plaintiff paints with too broad a brush, while defendant paints with too narrow a one. NASCAR wants plaintiff to more specifically identify what it wants, while plaintiff wants NASCAR to first identify what it possesses. The concerns of both parties can be resolved through better communication.

Plaintiff is generally correct that specifying categories is sufficient, but plaintiff will be required to review the financial documents already in its possession (a small subset of the overall document production) and to more specifically identify which financial documents it continues to seek. For its part, defense counsel will be directed to identify what specific financial documents exist concerning NASCAR'S "unrelated" businesses and affiliates which NASCAR is declining to produce on grounds of relevancy. Even if defendant's confidence is misplaced that plaintiff "[does] not need the additional financial information," plaintiff's review of the previously produced documents should help narrow plaintiff's requests and/or assist plaintiff in presenting a better argument on the relevancy of undisclosed documents in a renewed motion if necessary. Notwithstanding the breadth of discovery in general,

---

[2] Plaintiff complains generally that defendant's production has been underinclusive on responsive documents, while simultaneously overinclusive on documents of questionable responsiveness. According to plaintiff, defendant has used "document separator" pages, "file cover copies" and "end of file" pages to boost volume without content.

4

plaintiff has not yet satisfied its burden to show that the wholesale production of sensitive financial documents from affiliated businesses is relevant.

Accordingly **IT IS ORDERED:**

1. Plaintiff's motion to compel [DE #115] is **denied without prejudice to renew** following full compliance with this order;

2. Defendant shall, within fifteen (15) days of the date of this order, complete production of responsive financial documents and provide plaintiff with a specific list of financial documents responsive to plaintiff's broad requests but not produced on grounds of relevancy;

3. Plaintiff's counsel shall review all financial documents produced by defendant within thirty (30) days of the date of this order in order to better determine whether it needs additional financial information and if so, what information it seeks;

4. Defendant's motion for a hearing [DE #121] is **denied**;

5. Plaintiff's motions to seal [DE #123, 130] are **granted**, and the previously filed affidavit of W.B.Markovits and its attachments, submitted in conjunction with the reply memorandum in support of plaintiff's motion to compel discovery [DE #124] shall be **placed under seal**, as shall the plaintiff's October 10, 2006 motion to compel regarding certain categories of documents, its exhibits and attachments;

6. The parties' joint motion to extend discovery and pretrial deadlines [DE #127] is **granted** and the proposed order has been entered herewith;

7. Defendants shall file any written response to the October 10, 2006 motion to compel not later than **October 27, 2006**, with any reply to be filed not later than **November 9, 2006.**

8. Before bringing any future discovery dispute before this court, the parties should first fully comply with LR 37.1 by employing their best efforts to resolve their dispute extrajudicially. If unable to

5

resolve the dispute without court intervention, counsel should telephonically contact the chambers for the undersigned magistrate judge to seek a telephonic conference *prior to filing any discovery-related motion*. Only if specifically directed to do so should counsel file a written motion and memorandum.

This the 12th day of October 2006.

Signed By:
*J. Gregory Wehrman*
United States Magistrate Judge