**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT COVINGTON**

**CIVIL ACTION NO. 05-138-WOB**

**KENTUCKY SPEEDWAY, LLC**                                              **PLAINTIFF**

**VS.**

**NATIONAL ASSOCIATION OF STOCK
CAR AUTO RACING, INC., ET AL.**                        **DEFENDANTS**

**MEMORANDUM ORDER**

On October 12, 2006, this court denied plaintiff's motion to compel defendant to produce certain highly confidential financial documents, but without prejudice to renew that motion upon full compliance with the order. Plaintiff Speedway subsequently renewed the motion orally, and a telephonic hearing was held at 10:30 a.m. on November 21, 2006 on the renewed motion. In addition to plaintiff's renewed motion to compel, the hearing addressed plaintiff's oral motion to compel Mike Helton, NASCAR president, to answer questions regarding the total compensation received by that witness. Finally, the court addressed plaintiff's November 9, 2006 motion to seal certain documents and International Speedway's motion for leave to file a surreply concerning plaintiff's October 13 motion to compel.

Bill Markovits and Mark Guilfoyle appeared on behalf of plaintiff; Helen Maher and Stuart Singer appeared on behalf of defendant NASCAR; and Guy Wade, Rob Craig and Glenn Padgett appeared on behalf of defendant ISC.[1]  In addition to appearances by counsel, Karen Leetzow, Jim France, and Gary Crotty were present as representatives of NASCAR. Court reporter Joan Averdick recorded the telephonic proceedings.

In addition to the three motions discussed at the telephonic hearing, this Memorandum

---

[1] All appearances were made telephonically.

1

Order will address Speedway's sealed motion to compel, originally filed on October 27, 2006 [DE #134].

### I. Plaintiff's Oral Motion to Compel Salary Information

At the parties' request, the court previously held a conference call on November 15, 2006 concerning plaintiff's oral motion to compel a defense witness, the President of NASCAR, to disclose information concerning his total pay package during his deposition. The court took under submission defendants' objection based on relevancy, pending further argument and briefing on the issue. On November 21, the court heard further oral argument concerning this issue and has reviewed the case law cited by the parties. The court concludes based upon the argument and case law presented that the compensation of the referenced witness may be relevant to show bias. *See e.g., Hayes v. Compass Group U.S.A., Inc.,* 202 F.R.D. 363 (D. Conn. 2001). However, due to the sensitivity of the information, it must be treated by the parties as "highly confidential" under the existing protective order.

### II. Plaintiff's Renewed Motion to Compel Financial Records

Most of the parties' dispute is centered on whether certain financial documents must be produced by defendant NASCAR in response to plaintiff's requests. The court's October 12, 2006 summary of the dispute is repeated herein for the convenience of the court:

> Plaintiff served its first request for production on February 17, 2006. Defendant responded in March, but declined to produce all "tax returns" or "audited or unedited financial statements, including income statements, balance sheets and operating statements for NASCAR and its affiliated entities." NASCAR objected both on grounds of relevancy for most of the documents, and because the request would require NASCAR to disclose "confidential business information and trade secrets to a proclaimed competitor." The latter objection is at least partially ameliorated by the existing protective order in the record.[2]
>
> NASCAR's relevancy objection is based on the fact that it operates eleven

---

[2] That said, the court is not oblivious to the fact that preventing disclosure of sensitive financial information to a competitor is always a better form of security than the most detailed protective order.

2

other racing series and numerous businesses, including movie and television productions, which are wholly unrelated to the Nextel Cup Series and/or premium stock car racing that is the subject of this lawsuit. NASCAR also has subsidiaries which conduct businesses which NASCAR contends are unrelated to the subject matter of the first amended complaint. NASCAR has offered to produce financial documents limited to "the markets set forth in the First Amended Complaint." In fact, NASCAR has already provided all profit and expense information relating to the NEXTEL Cup Series.

Plaintiff responds to NASCAR's relevancy objection with four basic arguments: 1) the documents are relevant to show market share; 2) the documents are relevant due to the possibility of cross-subsidization; 3) the documents are relevant to show overlap with ISC; and 4) additional documents are needed to demonstrate the types of relevant documents available.

Plaintiff first argues that limiting records to the markets of premium stock car racing is unfair because "all facets of NASCAR relate to, and are dependent on, revenues derived from premium stock car racing." Plaintiff alleges that all NASCAR profits "whether in sponsorship, licensing, or branded hot dogs" can be traced back to relate to the Nextel Cup Series. In that sense, plaintiff argues very broadly that the financial information is relevant to show NASCAR's "market power." Only financial data concerning the relevant market is relevant, a point not disputed by plaintiff. Instead, plaintiff seeks an extremely broad definition of the relevant market.

Plaintiff next argues that broad information is relevant because of the possibility of "cross-subsidization." Plaintiff explains that NASCAR "may" have loaded expenses into the "competition" financials, decreasing apparent profitability in that area, while increasing profitability in a different area concerning which no financial data is produced. Defendants object that the mere "possibility" of this type of "cross-subsidization" should not entitle the plaintiff to otherwise irrelevant financial data.

Plaintiff's third argument in favor of relevancy is that the financial data for all businesses is necessary "to the extent there is any overlap with ISC." However, NASCAR contends that it is improper to assume "overlap" between NASCAR and ISC unrelated to the relevant product market for premium stock car racing or the market for "the right to host" such races. To the extent that NASCAR has shared expenses with ISC, defendant argues that they are disclosed in ISC's public filings with the government, available on the SEC's website since 1998. Plaintiff objects that it should not have to accept "at face value ISC's summary description of the overlap between ISC and NASCAR."

Finally, the parties argue about whether plaintiff should be required to review the financial documents already in its possession.. ...
...

...[P]laintiff will be required to review the financial documents already in its possession (a small subset of the overall document production) and to more

3

>  specifically identify which financial documents it continues to seek.  For its part, defense counsel will be directed to identify what specific financial documents exist concerning NASCAR'S "unrelated" businesses and affiliates which NASCAR is declining to produce on grounds of relevancy.   Even if defendant's confidence is misplaced that plaintiff "[does] not need the additional financial information," plaintiff's review of the previously produced documents should help narrow plaintiff's requests and/or assist plaintiff in presenting a better argument on the relevancy of undisclosed documents in a renewed motion if necessary.  Notwithstanding the breadth of discovery in general, plaintiff has not yet satisfied its burden to show that the wholesale production of sensitive financial documents from affiliated businesses is relevant.

[DE # 133, pp. 2-4].

The court thereafter ordered defendant to "complete production of responsive financial documents and provide plaintiff with a specific list of financial documents responsive to plaintiff's broad requests but not produced on grounds of relevancy" and ordered plaintiff to "review all financial documents produced by defendant within thirty (30) days of the date of this order in order to better determine whether it needs additional financial information and if so, what information it seeks."

At the November 21 hearing, defense counsel argued that plaintiff had not complied with its obligations under the October 12 order, while plaintiff's counsel argued that defendant had been equally remiss.  Having reviewed the parties' submissions to chambers in preparation for the telephonic hearing, I conclude that neither party is blameless.[3]  Nonetheless, the economy of judicial resources mandates resolution of the parties' ongoing dispute.

Plaintiff has filed the affidavit of an expert economist who broadly states that "[f]inancial documents of the nature requested by Plaintiff from NASCAR *may* be useful in determining issues of market definition and market power." (Emphasis added).  In response, defendant has filed the affidavit of its expert which disagrees with both the "premises and conclusions relating

---

[3] NASCAR did not specifically identify a list of documents it was continuing to withhold until November 15, 2006.  For its part, Speedway's counsel admitted that it had not reviewed every financial document previously produced.

4

to the need for all financial information from NASCAR and its affiliates" attested to by plaintiff's expert. The court finds the affidavits of these experts to be of little assistance.

Following the November 21 hearing, defendant NASCAR and plaintiff Speedway both submitted additional pleadings in correspondence form to the court, which correspondence has been considered by this court for purposes of this discovery dispute but not filed of record. Having revisited the arguments previously presented by the parties in their written memoranda concerning the plaintiff's original motion to compel, and having reviewed the parties' most recent submissions and arguments, I conclude that NASCAR should be compelled to produce some of the financial documents requested under the "highly confidential" designation of the parties' protective order.

NASCAR contends that discovery should be limited to financial records concerning the NEXTEL cup, arguing that other courts have not permitted discovery into product lines outside those alleged in the complaint. *See e.g., Mfting Research Corp. v. Greenlee Tool Co.,* 693 F.2d 1037, 1042-43 (11th Cir. 1982)(affirming denial of discovery of defendant's sales of conduit benders where the relevant product was the cable bender, a very different and distinct tool); *Vilastor Kent Theater Corp. v.* Brandt, 18 F.R.D. 199 (S.D.N.Y. 1955)(records concerning first run theaters were not subject to discovery where plaintiffs, alleging Sherman Act violations concerning denial of second run theaters, failed to show relevance of first run theater records); *T.C. Theatre Corp. v. Warner Bros. Pictures, Inc.,* 16 F.R.D. 173, 174-175 (S.D.N.Y. 1954)(same).

I conclude that the cases cited by the defendant are largely distinguishable based upon the additional showing of relevance made by plaintiff in this case. As a rule, information is discoverable if: 1) "relevant to the claim or defense of any party;" 2) "reasonably calculated to lead to the discovery of admissible evidence;" and 3) not subject to privilege. Rule 26(b)(1), Fed. R. Civ. P.; *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). Once a party

5

raises an objection to discovery based on relevance, "the burden shifts to the party seeking the information to demonstrate that the requests are relevant to the subject matter involved in the pending action." *Allen v. Howmedica Leibinger*. 190 F.R.D. 518, 522 (W.D. Tenn. 1999).

Although plaintiff failed initially to carry its burden to show the relevance of the requested information, plaintiff has now carried that burden in part with respect to market definition. The defendant disputes plaintiff's definitions of the market in question. Plaintiff argues persuasively at this juncture that revenues, expenses, and other financial information relating to at least some of NASCAR's businesses outside of the NEXTEL Cup is relevant to define and distinguish premium stock car racing from other motorsports within and outside NASCAR. *See e.g., International Boxing Club of N.Y., Inc. v. United States*, 358 U.S. 242 (1959)(comparing revenues from championship boxing contests to revenues from nonchampionship boxing programs to define relevant market as championship contests); *NCAA v. Board of Regents of University of Oklahoma*, 468 U.S. 85 (1984)(defining college football as separate market by reviewing broad information relating to broadcasters, advertisers and viewers).

Despite carrying its burden to show the relevance of some of the financial data it seeks, plaintiff still falls short of carrying its burden to show the relevancy of the broad financial information plaintiff seeks relating to ISC. Plaintiff argues that the additional information might be relevant to demonstrate additional interrelationships between NASCAR and ISC. In light of the breadth of the requests and the sensitivity of the information and the fact that much information is already of public record through public filings by ISC, the court declines to require production outside of information previously produced relating to the premium stock car racing market.

In addition, because plaintiff has barely crossed the threshold of making the showing of relevance required for production of such sensitive records at this time to better define the

6

relevant market, the court will limit plaintiff to documents from no more than three calendar years, not to include data prior to 1997. If upon further analysis of this sampling of documents, plaintiff and plaintiff's expert are able to make a much stronger showing of relevance, the court will reconsider plaintiff's request for additional documents. All the financial information ordered to be produced by this Memorandum Order is subject to the previously entered protective order.

### III. Plaintiff's Sealed Motion to Compel Certain Categories of Documents

Plaintiff Speedway seeks to compel four categories of documents which NASCAR and ISC have refused to produce: 1) documents in ISC's possession prior to 1997; 2) documents in ISC's possession concerning the formation of a joint venture with a non-party; 3) metadata concerning author and document creation information from ISC; and 4) documents relating to a prior antitrust case, *Ferko v. Nascar, et al.*

As a preliminary matter, defendant ISC accuses plaintiff of engaging in a deliberate strategy "by exponentially increasing the time and money ISC must pay if it is to comply" with discovery requests, in order to make discovery so expensive that the defendant will be forced into settlement. ISC bases its accusation upon a comment made by plaintiff's banker in a commercial and industrial underwriting analysis:

> one of the more likely outcomes of the suit is that the discovery phase continues for a period of time until it becomes too uncomfortable for ISC and NASCAR and an offer is made to purchase the track. ...

> The most likely scenario at this point in the lawsuit if the discovery phase continues and becomes overly costly or cumbersome for ISC and NASCAR, the attorneys would expect an offer from ISC to purchase the track.

Commercial and Industrial Underwriting Analysis for Kentucky Speedway produced by Huntington Bank, DE #136, p. 1 and Ex. 1 at p. 8. As of the date of its responsive memorandum, defendant ISC represents that it has spent over five months and more than three million dollars in responding to plaintiff's document discovery requests.

7

Plaintiff objects to the charge, which it calls "unsubstantiated." Plaintiff asserts that it is unreasonable for defendant to base such a serious allegation on a third party consultant's speculative opinion on the "likely outcome" of this litigation. However, defendant notes that this same conclusion is referenced in two separate documents, one of which reflects a handwritten note from a meeting between plaintiff and its bankers. The President of Speedway, Mark Simendinger, admits he was in attendance at that meeting but neither admits nor denies having made the statement. Defendant argues that the most likely source of the third party's opinion on the outcome of this litigation was plaintiff itself.

The court has some concerns with breadth and timing of plaintiff's requests, but does not find based upon the record to date that plaintiff has acted out of malice or with a "strategy to use discovery as a weapon to blackmail ISC into settling the lawsuit." DE #136 at p. 2. Should additional or stronger evidence of ill motive arise, the court may revisit this issue.

### A. Pre-1997 Documents

Speedway alleges that defendants NASCAR and ISC have monopolized markets for premier stock car racing and premier stock car racetracks over a prolonged period of time. Construction on the Kentucky Speedway did not begin until 1997; the track hosted its first race in 2000. However, Speedway has alleged that NASCAR and ISC began a course of conduct whereby they "starved competing racetracks of revenue so that ISC [could] buy a track at a reduced price" prior to Speedway's construction. DE #134 at p. 2, Complaint at ¶31. Plaintiff seeks ISC documents from 1992 to 1997 in order to discover information relating to ISC's alleged "growth strategy, attempts to expand, attempts to stifle competition by other major motorsports facilities, attempts to obtain a race, the scheduling and sanctioning of Winston Cup races, and ISC's conspiracy with NASCAR." DE 134, at 3. In support, plaintiff cites *Continental Ore v. Union Carbide*, 370 U.S. 690 (1962), in which the Supreme Court held that the trial court had erred in excluding evidence relating to a period of time prior to the plaintiff

8

arriving in the country in 1938.

> Petitioner's sought to introduce evidence that the conspiracy and monopolization alleged began in the early 1930's, that overt acts in furtherance thereof occurred in the 1930's, and that it was pursuant to this anticompetitive scheme that respondents sought to and did eliminate petitioners from the vanadium industry after 1938. This evidence was clearly material to petitioners' charge that there was a conspiracy and monopolization in existence when they came into the industry, and that they were eliminated in furtherance thereof. We do not mean that a trial court may not place reasonable limits upon such evidence or set a reasonable cut-off date, evidence before which point is to be considered too remote to have sufficient probative value to justify burdening the record with it.

370 U.S. at 709-710.

In this case, Speedway alleges that a similar anti-competitive conspiracy existed prior to Speedway's construction. As an example, plaintiff points to the Homestead-Miami Speedway, where construction began in 1993 with the track opening in 1995. ISC produced a January 1997 document discussing the purchase of the Homestead-Miami track, as well as a June 1996 document which plaintiff alleges demonstrates that ISC was discussing the purchase of that track at that date. Plaintiff notes that a 2003 ISC document suggests that ISC's growth strategy was put into place "in the mid 1990's." In 1996 ISC became a public company.

ISC objects to production of any documents prior to 1997, arguing that any alleged harm to plaintiff could only occur after plaintiff came into existence, and that forcing ISC to review its documents anew for the 1992-1997 time period is unreasonably burdensome. On the facts of this case, I agree that the burden to ISC outweighs any potential benefit to Speedway and therefore will deny the requested discovery.

ISC objected to the production of pre-1997 documents shortly after receiving plaintiff's requests. In response to that objection dated April 24, 2006, plaintiff's counsel stated that he would review plaintiff's document requests and notify defense counsel "shortly" if plaintiff needed pre-1997 documents for a particular request. However, it was not until September 22, 2006 -after ISC completed its initial production of documents - until plaintiff identified the

9

additional documents it sought. Based upon previous document production costs, ISC represents that it would cost $500,000 to complete the additional document review for pre-1997 documents. This burden is significant in and of itself, but even more so when considering that ISC's routine document retention policy would have mandated destruction of all pre-1997 documents in any event.

### B. Documents Concerning Joint Venture

Plaintiff also seeks documents relating to the business relationship between ISC and a non-party, SMI, which is in the business of making toy die-cast cars and apparel. In a separate joint venture, ISC and SMI acquired a third company that owns racetracks. Plaintiff alleges that documents relating to the toy car venture are relevant because the formation of that joint venture "stems directly from ISC and SMI's attempt to acquire another racing facility." However, defendant ISC protests that the documents concerning the toy car venture concern an unrelated company and an unrelated business and have nothing to do with the venture relating to the racetrack company. Put simply, "[b]uilding and selling toy cars has nothing to do with 'hosting premium stock car races' and therefore is not relevant to any material issue in this case." DE #136 at 13. I agree that the documents sought by this request are either entirely irrelevant or of such marginal relevance that the burden of production outweighs any possible benefit to the plaintiff. Plaintiff's motion concerning these documents will be denied.

### C. Metadata

Metadata has been defined as "information about a particular data set which describes how, when, and by whom it was collected, created, accessed, or modified and how it was formatted." *Williams v. Sprint/United Management Co.,* 230 F.R.D. 640, 646 (D. Kan. 2005)(quoting Appendix F to *The Sedona Guidelines: Best Practice Guidelines and Commentary for Managing Information & Records in the Electronic Age).* Relying chiefly on the *Williams* case, plaintiff seeks metadata for virtually all records maintained in electronic form

10

which have been produced to date.

Rule 34 specifically includes the term "data compilations" as documents that must be produced, but does not define that term to necessarily include metadata. The amended version of Rule 34, which took effect December 1, 2006, provides that where a request does not specify the form of production, information must be produced "either in a form or forms in which it is ordinarily maintained, or in a form or forms that are reasonably usable." Rule 34(b)(ii), Fed. R. Civ. P. The Advisory Committee Notes to the newly amended rule make clear that if the information is maintained in a way that makes it "searchable by electronic means," then "the information should not be produced in a form that removes or significantly degrades this feature." However, as one commentator has observed, "[n]either default form is intended to mandate production of metadata or embedded data." Allman, T., *The Impact of the Proposed Federal E-Discovery Rules*, 7 Sedona Conf. J. 31 (Fall 2006). *The Sedona Principles for Electronic Document Production* also suggest that a party should not be required to produce metadata absent a clear agreement or court order. Principle 12, *The Sedona Principles*.

In the rapidly evolving world of electronic discovery, the holding of the *Williams* case is not persuasive. Having the benefit of the newly amended rules, advisory notes, and commentary of scholars, I respectfully disagree with its conclusion that a producing party "should produce the electronic documents with their metadata intact, unless that party timely objects ..., the parties agree that the metadata should not be produced, or the producing party requests a protective order." As noted in the more recent *Wyeth v. Impax laboratories, Inc.,* 2006 WL 3091331 (D. Del. 2006), "'[e]merging standards of electronic discovery appear to articulate a general presumption against the production of metadata.'" Although plaintiff may protest that Delaware has adopted local standards which provide a "default standard" against the production of metadata, this court is convinced - at least on the facts of this case - that the production of metadata is not warranted.

11

The issue of whether metadata is relevant or should be produced is one which ordinarily should be addressed by the parties in a Rule 26(f) conference. Here, the parties clearly had no agreement that the electronic files would be produced in any particular format. Plaintiff did not notify defendant ISC that it sought metadata until seven months after ISC had produced both hard copy and electronic copies of its documents.

Plaintiff has not made any showing of a particularized need for the metadata.[4] Although plaintiff argues generally that it "needs document custodian information for the prosecution of its case" because "Kentucky Speedway has *no idea* of the origin of many of the documents" plaintiff does not identify any specific document or documents for which such information would be relevant and is not obtainable through other means. DE #139, at p. 4. In most cases and for most documents, metadata does not provide relevant information. Metadata may or may not provide the information plaintiff seeks concerning specific documents in this case. Depending on the format, the metadata may identify the typist but not the document's author, or even just a specific computer from which the document originated or was generated.

To the extent that plaintiff seeks metadata for a specific document or documents where date and authorship information is unknown but relevant, plaintiff should identify that document or documents by Bates Number or by other reasonably identifying features. Responding to a request for additional information concerning specific documents would be far less burdensome to defendant and far more likely to produce relevant information. Should the parties be unable to resolve any dispute concerning any limited requests by plaintiff for metadata on a specific document or documents, the parties may contact the court by telephone for assistance.

---

[4]In its reply memorandum, Kentucky Speedway offers to stipulate that to the extent ISC identifies date, authorship, and custodial information, plaintiff will not seek metadata. To the extent that plaintiff seeks this information for every document thus far produced by ISC, the request is overbroad and unduly burdensome for the same reasons as indicated for the metadata request.

D. Texas Litigation Documents

Plaintiff seeks a multitude of documents which otherwise would be protected from disclosure by the protective order entered by the Eastern District of Texas in *Ferko v. NASCAR, et al.,* Civil Action No. 02-cv-00050-RAS. Plaintiff has moved to intervene in Texas in order to modify the protective order to permit use of the documents in this court. Defendant objects to this court issuing a ruling prior to a ruling by the Eastern District of Texas. Defendant has filed a separate motion to stay concerning this same issue. I agree that it is within the province of the United States District Court for the Eastern District of Texas to modify its own protective order, and therefore decline to address the issue in this court.[5]

Accordingly, **IT IS ORDERED:**

1. Plaintiff's oral motion to compel defense witness Mike Helton to respond to questions concerning his total pay package is **granted**;

2. Plaintiff's motion to seal [DE #138] is **granted**;

3. The motion of International Speedway for leave to file a surreply [DE #140] is **granted**;

4. Plaintiff's oral renewed motion to compel disclosure of additional financial records is **granted**, solely to the extent specified herein:

   a. Based upon the threshold showing of relevance, defendant NASCAR need produce only a "sampling" of financial data for a period not to exceed three years to be selected by plaintiff. For the selected years, defendant NASCAR shall produce all annual documents listed in the November 15, 2006 letter. Defendant need not produce monthly data, except to the extent that annual data is unavailable;

   b. Only if plaintiff is able to make a much stronger showing of relevance after analysis

---

[5]Plaintiff's motion to intervene for purposes of modifying the protective order was filed on August 15, 2006 in the Texas court, with reply memoranda last filed on November 10, 2006.

13

of this sample data will the court consider a renewed request for additional data. In addition to the strictures in the parties' agreed protective order, the sample financial data may be made subject to reasonable additional restrictions to ensure adequate protection during copying and transfer;

      c. Defendant NASCAR shall produce all tax returns requested for NASCAR, Inc. but defendant ISC need not produce tax records at this time;

      d. To the extent not previously produced, Defendant NASCAR shall produce the supporting financial documents used to prepare financial summaries such as that attached as Exhibit 4 to plaintiff's November 20, 2006 correspondence to the court (1999 Nascar Busch Series Chart);

      e. Plaintiff shall notify defendant which three calendar years for which it seeks data within ten (10) days of this order, not to include data prior to 1997, following which defendant shall have an additional twenty (20) days in which to produce the records;

      5. Plaintiff's motion to compel [DE #134] is **denied**.

      This the 18th day of December 2006.

Signed By:
**J. Gregory Wehrman**
United States Magistrate Judge

| TIC | | 53 |

14